**Cleveland Luke THIBODEAUX, Jr.,
Plaintiff–Appellant,**

v.

**TORCH, INC., Defendant–Appellee.**

**No. 88–4004**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1988.

Rehearing and Rehearing En Banc
Denied Dec. 1, 1988.

Timothy A. Jones, Jones & Fuhrer, Lafayette, La., for plaintiff-appellant.

Michael J. Maginnis, Timothy P. Hurley, Gerard J. Sonnier, McGlinchey, Stafford,

Mintz, Cellini & Lang, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge and JOHNSON and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge.

Plaintiff Cleveland Luke Thibodeaux, Jr. brought the instant suit against his former employer, defendant Torch, Inc., under the Jones Act, 46 U.S.C.App. § 688, for injuries suffered by Thibodeaux during the course of his employment with Torch. The district court concluded that, at the time of his injury, Thibodeaux was covered under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b), and therefore was ineligible for seaman status under the Jones Act. Accordingly, the district court entered an order granting summary judgment in favor of Torch and dismissing Thibodeaux's claim. 674 F.Supp. 1240. Because we conclude that a genuine issue of material fact exists as to Thibodeaux's status under the Jones Act, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

In 1985, plaintiff Cleveland Luke Thibodeaux, Jr. was employed by Torch, Inc. as a crane operator on the barge L/B LITTLE SHANE. The L/B LITTLE SHANE is used by Torch to lay pipe offshore. Thibodeaux maintains that his employment duties with Torch consisted of loading the barge L/B LITTLE SHANE with supplies necessary to perform work offshore and operating the winches and cranes on the barge while the vessel was offshore. Thibodeaux further states that preparation of the L/B LITTLE SHANE for an offshore job typically lasted approximately one to three days, while each offshore job on the vessel itself lasted approximately two to four weeks. Finally, Thibodeaux asserts that he performed approximately ninety percent of his employment with Torch aboard the L/B LITTLE SHANE laying pipe offshore.

On March 6, 1986, the date of the accident forming the basis of the instant suit, Thibodeaux was working at Torch's waterside fabrication yard located in Empire, Louisiana, on the navigation canal to the Intercoastal Waterway. On that date, the L/B LITTLE SHANE was tied up to a dock adjacent to the Empire fabrication yard. At this point, Thibodeaux and Torch differ on the reason the L/B LITTLE SHANE was docked at Empire and the specific employment duties of Thibodeaux on the date of the accident. Thibodeaux maintains that he reported to the fabrication yard on March 6, pursuant to a call from Torch to begin loading the barge L/B LITTLE SHANE with pipe, sand and tools to be used on a pipelaying job offshore. Torch, however, contends that on March 6, Thibodeaux and other Torch employees were constructing a new crew quarters for the L/B LITTLE SHANE. Torch asserts that the L/B LITTLE SHANE was laid up at the fabrication yard for "winter maintenance," a seasonal period during which a barge is without work and consequently, all major repairs and refurbishing to equipment on the barge are performed.

In any event, while Thibodeaux was working at the Torch fabrication yard on March 6, Thibodeaux's co-employee Calvin Savoie suffered a heart attack. Because of a delay in obtaining an ambulance to transport Savoie to emergency medical facilities, Thibodeaux and another Torch employee placed Savoie in the back of a Torch-owned Suburban Carryall to transport Savoie to the hospital. As the Carryall took off, the rear door opened and all three individuals were thrown from the vehicle. As a result, Thibodeaux dislocated his right shoulder and subsequently filed the instant suit against Torch under the Jones Act seeking damages for the injuries which he sustained in the accident.

Thereafter, Torch filed a motion for summary judgment asserting that Thibodeaux was covered under the LHWCA at the time of his accident on March 6, 1986; thus, Thibodeaux was not eligible under the

Jones Act for seaman status and the benefits attendant with that status. The district court ultimately granted Torch's motion for summary judgment concluding that, at the time of the accident on March 6, 1986, Thibodeaux was engaged in loading a vessel—a traditional duty of a longshoreman; therefore, Thibodeaux was covered by the LHWCA and ineligible for benefits under the Jones Act. Thibodeaux now appeals.

## II. DISCUSSION

Initially, we note that summary judgment is proper only in those instances where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking to obtain a summary judgment must inform the district court of the basis of its motion and identify those portions of the record which demonstrate the absence of a genuine of issue of a material fact. *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987). Once the movant has satisfied the above showing, the burden then shifts to the nonmovant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–28, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986)).

In concluding that Thibodeaux was covered by the LHWCA at the time of his accident and therefore ineligible for benefits under the Jones Act, the district court relied on the decision of this Court in *Pizzitolo v. Electro–Coal Transfer Corp.*, 812 F.2d 977 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988). In *Pizzitolo,* the plaintiff was an electrician who spent approximately seventy-five percent of his time maintaining and repairing shore-based machinery and twenty-five percent of his time replacing or repairing equipment on vessels. Pizzitolo brought suit under the Jones Act against

his employer seeking damages for injuries which he sustained during the course of his employment. Ultimately, the jury determined that Pizzitolo was a seaman eligible to recover damages under the Jones Act. However, the district court subsequently granted a motion by Pizzitolo's employer for judgment notwithstanding the verdict on the basis that Pizzitolo was not a seaman within the context of the Jones Act. In affirming the above ruling by the district court, this Court did not apply the traditional analysis set forth in *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir.1959), and *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986) (en banc), for determining whether a plaintiff is a seaman for purposes of recovering damages under the Jones Act. Instead, the Court in *Pizzitolo* initially determined whether or not Pizzitolo was engaged in an occupation expressly enumerated in the LHWCA. Concluding that Pizzitolo, a ship repairer, was engaged in an occupation enumerated in the LHWCA and reasoning that the LHWCA and the Jones Act are mutually exclusive in scope, the Court in *Pizzitolo* held that Pizzitolo was ineligible for benefits under the Jones Act. *Pizzitolo*, 812 F.2d at 983. Specifically, the *Pizzitolo* Court stated,

> Although we have on occasion analyzed the question of whether an employee engaged in longshoring or ship repairing was a member of the crew of a vessel under the *Robison* test, we are persuaded that such an analysis is unnecessary if the employee is engaged in an occupation expressly enumerated in the [LHWCA].

*Id.* at 983 (footnote omitted).

This Court further amplified on the *Pizzitolo* analysis in a later case, *Leonard v. Dixie Well Service and Supply, Inc.*, 828 F.2d 291 (5th Cir.1987). In *Leonard,* the Court utilized the *Pizzitolo* approach to determine whether summary judgment was precluded by the existence of a genuine issue of material fact as to the status of the plaintiff Leonard under the Jones Act. In this regard, the *Leonard* Court stated that "[f]ollowing the *Pizzitolo* analysis, the

traditional tests for seaman status become 'unnecessary' only when the 'employee is engaged in an occupation expressly enumerated in the [Longshore and Harbor Workers' Compensation] Act.'" *Leonard,* 828 F.2d at 296 (quoting *Pizzitolo,* 812 F.2d at 983)). Further, the *Leonard* Court noted that section 902(3) of the LHWCA defines "employee" as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker" but specifically excludes from the definition of employee "a master or member of a crew of any vessel." 33 U.S.C. § 902(3)(G).

Relying primarily on the fact that Leonard claimed he spent approximately seventy percent of his employment time aboard vessels as a Jones Act crew member, the *Leonard* Court concluded that a genuine issue of material fact existed as to the status of Leonard under the Jones Act and accordingly reversed the district court's grant of summary judgment in favor of Leonard's employer. *Leonard,* 828 F.2d at 297. The Court in *Leonard* distinguished *Pizzitolo* by stressing the fact that the plaintiff in *Pizzitolo* was described by the Court in that case as a "ship repairer" who spent three quarters of his time on shore and was thus clearly eligible for LHWCA coverage but not Jones Act coverage. *Id.* at 296.

In the instant case, both Torch and the district court apparently misperceive our holding in *Pizzitolo* regarding the determination of the status of a plaintiff for purposes of the Jones Act. Specifically, Torch and the district court mistakenly isolate their inquiry as to the status of Thibodeaux in this regard to the activity of Thibodeaux at the time of his accident on March 6, 1986. Indeed, Torch essentially argues that, regardless of the other employment activities of Thibodeaux, his activities at the time of his accident are the "be all and end all" of the analysis. As evidenced by this Court's holding in *Leonard,* such an approach is incorrect. The activity of a plaintiff seeking damages under the Jones Act at the time of his injury is only one factor in the *Pizzitolo* analysis of whether or not that individual is engaged in an occupation covered by the LHWCA and thus ineligible for Jones Act benefits. While it is correct that at the time of his accident, Thibodeaux was either on shore constructing new crew quarters for the L/B LITTLE SHANE or, as Thibodeaux asserts, on shore loading the L/B LITTLE SHANE with sand for a subsequent pipelaying job offshore, Thibodeaux also maintains that he spent approximately ninety percent of his employment time with Torch offshore on board the L/B LITTLE SHANE as a member of the crew of that barge. Indeed, Torch does not dispute that Thibodeaux's job title for purposes of receiving compensation was a crane operator on board the L/B LITTLE SHANE.

We are persuaded that the facts presented by the instant case are more analogous to the facts in *Leonard* rather than the facts in *Pizzitolo.* Therefore, we conclude that a genuine issue of material fact exists as to Thibodeaux's status as a seaman. Accordingly, we reverse the district court's grant of summary judgment and remand for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.