**Mary Ann ROJAS and Joe Rojas, Plaintiffs,**

v.

**WAL–MART STORES, INC., Defendant.**

**Civ. A. No. 7:93–CV–041–K.**

United States District Court, N.D. Texas, Wichita Falls Division.

June 1, 1994.

---

534

Hank Anderson, Anderson & Rodriguez, Wichita Falls, TX, for plaintiffs.

Charles Oldham, Oldham & Barnard, Wichita Falls, TX, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

BELEW, District Judge.

Came on this day to be considered Defendant's Motion for Summary Judgement, filed February 28, 1994. Plaintiffs filed a Response on March 21, 1994. Defendant filed a Reply on April 5, 1994. After a careful review of the pleadings, the law, and the arguments, the Court is of the opinion that Defendant's Motion is well-taken and should be GRANTED, except for that part which seeks sanctions.

### I. FACTUAL BACKGROUND

This litigation arises from an incident on or about November 4, 1991, on the premises of Wal–Mart Store located on Kell Boulevard in Wichita Falls, Texas ("Wal–Mart"). Mary Ann Rojas ("Rojas") went to Wal–Mart to purchase gloves and a winter hat for her husband. She sustained injuries when she slipped and fell in a puddle of liquid laundry detergent on the floor near the household goods display. As a result of the fall she suffered serious injuries to her right arm and elbow. She subsequently had surgery on her right elbow.

At approximately 5:30 p.m. on November 4, 1991, Larry Thompson ("Thompson"), a Wal–Mart employee, saw Rojas walk down the store aisle and fall to the floor. When he went to her aid, Rojas stated that she was fine and asked that her coat and skirt be cleaned by Wal–Mart. Thompson observed that there was an open plastic bottle of Tide liquid detergent and a puddle of detergent on the floor. The bottle was not broken and neither was the cap. Although the parties disagree as to what color the detergent was,

they agree that there was no debris in the detergent. The only mark in the puddle was the mark left by Rojas when she slipped and fell.

Defendant has presented the affidavit of Thompson, who swears that he checked the aisle "not more than ten minutes prior to the time [he] observed Ms. Rojas fall." He states that at that time there was no liquid on the floor, nor was there an open bottle of detergent. Additionally, he attests that a "zone check" was performed on that aisle at 3:30 p.m. on that date. A zone check is a procedure used by Wal–Mart wherein store personnel check everything on display in a particular zone and ensure that it is neatly on the shelf.

On March 11, 1993 Plaintiff Mary Ann Rojas filed suit in state court based on the Texas Deceptive Trade Practices Act ("DTPA") and on a common-law negligence or premises liability theory. Her husband, Joe Rojas is a Plaintiff under a loss of consortium theory. Defendant removed to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1141 and 1446.

### II. SUMMARY JUDGEMENT

Summary judgement is proper when the record establishes that no genuine issue as to any material fact exists, and the moving party is entitled to judgement as a matter of law. Fed.R.Civ.P. 56(c); *Hill v. London, Stetelman, & Kirkwood, Inc.*, 906 F.2d 204, 207 (5th Cir.1990). The evidence in the record is to be viewed in the light most favorable to the nonmoving party. *Newell v. Oxford Management Inc.*, 912 F.2d 793, 795 (5th Cir.1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir.1989).

In order to prevail on a motion for summary judgement, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to a judgement as a matter of law. Fed.R.Civ.P. Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Thibodeaux v. Torch, Inc.*, 858 F.2d 1048, 1050

(5th Cir.1988). The party moving for summary judgement need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. Rather, the party moving for summary judgement need only show that the party who bears the burden of proof has adduced no evidence to support an element essential to his case. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Teply v. Mobil Oil Corp.,* 859 F.2d 375, 379 (5th Cir.1988).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgement evidence of the existence of a genuine fact issue. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514. In order to avoid summary judgement, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. Rule 56(e) requires that the nonmoving party "set forth specific facts showing that there is a genuine issue for trial." *See Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmovant bears the burden of proof at trial, it must show the existence of elements essential to its case. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Failure to provide proof of an essential element will show that there is no genuine issue of material fact, and necessarily renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

## III. DISCUSSION

Defendant has moved for summary judgement both on the DTPA claim and the common law claim of negligence or premises liability.

### A. DECEPTIVE TRADE PRACTICES ACT CLAIM

#### 1. Plaintiffs' Standing Under the DTPA

■ Whether or not a plaintiff is a consumer under the DTPA is a question of law to be determined by the court. *Johnson v. Walker,* 824 S.W.2d 184, 187 (Tx.App.—Fort Worth, 1991, writ denied). In order to recover under the DTPA, Plaintiffs must establish that Rojas is a consumer, as defined by the statute. *Riverside National Bank v. Lewis,* 603 S.W.2d 169, 173 (Tex.1980). Defendant contends that Plaintiff Rojas is not a "consumer" within the meaning of Section 17.45 of the DTPA and, thus, does not have standing to sue under that statute. Failure to qualify as a consumer under the DTPA will defeat a plaintiff's claim.

■ The DTPA defines consumer, in relevant part, as: "an individual, ... who seeks or acquires by purchase or lease, any goods or services...." Tex.Bus. & Com.Code Ann. § 17.45(4) (West 1987). Texas courts have consistently held that in order to establish consumer status under the DTPA, a plaintiff must show: (1) that she acquired goods or services by purchase or lease, and (2) that the goods or services purchased or leased form the basis of the complaint. *Marshall v. Quinn–L Equities, Inc.,* 704 F.Supp. 1384, 1393 (N.D.Tex.1988); *Sherman Simon Enter. Inc. v. Lorac Serv. Corp.,* 724 S.W.2d 13 (Tex.1987). Plaintiffs have failed to show the second requirement.

Defendant argues that Plaintiffs have failed to establish that Rojas is a consumer within the meaning of the DTPA because her injuries do not arise from her attempt to purchase winter clothes, but from her incidental use of Wal–Mart's floors to purchase those goods. Plaintiffs argue that Rojas' use of the floors in the Wal–Mart store was a "service" furnished by Wal–Mart in connection with the sale of goods. In support of this argument, they point out that "services" within the meaning of the DTPA statute means: "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." Tex.Bus. & Com.Code Ann. § 17.45(4) (West 1987). Plaintiffs argue that use of the floors in Wal–Mart was a service furnished by Wal–Mart in connection with the sale of goods. Plaintiffs also point out that at least one Texas court has held that a facility, including its floors, is a "service" under the DTPA. *See Rickey v. Houston Health Club, Inc.,* 863

S.W.2d 148 (Tex.App.—Texarkana 1993, writ granted and cause set for submission, Feb. 17, 1994). In *Rickey,* the plaintiff fell and hurt his knee on a jogging track at a health club. In holding the health club liable under the DTPA, that court reasoned that the plaintiff had "contracted to use the premises for a specific purpose, i.e., to jog." *Rickey,* 863 S.W.2d at 151. The court went on to say: "Rickey paid his money for the right to use the facilities, he has not simply walked in from the street to shop. The facilities *are* the service." *Id.* (emphasis added).

Plaintiffs describe the *Rickey* court's statement regarding the inapplicability of the DTPA to a situation where a consumer walks in off of the street to shop as dicta. However, it is instructive in applying that court's logic to the case at hand. In *Rickey,* the plaintiff was paying *specifically* for the use of the facilities, including the jogging track. In Rojas' case, she sought to buy specific goods, and her use of the floors was incidental to her business at Wal–Mart. While the *Rickey* plaintiff had to pay money in order to use the jogging track, Rojas did not have to pay money to use the floors at Wal–Mart. Rojas could have used the Wal–Mart floors without paying any money at all, but the *Rickey* plaintiff could not jog on the health club track unless he first paid to use the track.

The condition of the floors at Wal–Mart was not a direct service sought by Rojas, nor was the condition of the floors her reason for shopping at Wal–Mart. She did not seek or acquire, by purchase or lease, the use of the floors. Rojas went to Wal–Mart to buy winter clothes. Any DTPA claim, therefore, must arise from her attempt to purchase the clothes, not from the mere fact that she walked on floors while attempting to purchase clothes. Plaintiffs have failed to show that the goods Rojas sought to purchase form the basis of her Complaint, and have thereby failed to establish that Rojas is a "consumer" under the DTPA. Since this is an essential element to Plaintiff's claim, Defendant's Motion for Summary Judgement must be granted.

Furthermore, although Plaintiffs point out that the statutory definition of "services" under the DTPA includes services furnished in connection with the sale of goods, the condition of Wal–Mart's floor is too attenuated from Rojas' attempt to purchase clothing to qualify as a service under the DTPA. The condition of the floors was not a service *in connection* with Rojas' attempt to buy winter clothes, it was a service *incidental* to her attempt to buy winter clothes.

■ Plaintiffs argue that "the ultimate consumer of goods ultimately pays for the overhead of the retail seller, including the facility and the floors." This is precisely the problem with applying the DTPA to this slip and fall case—there is no direct connection between the sale of goods and the cause of Plaintiff's injuries. The DTPA's definition of services is meant to apply to services more directly connected to business dealings: services which might enter into a consumer's consideration when buying a good, such as a warranty accompanying a good, or financial counseling in connection with the sale of securities. *See, e.g., Schmueser v. Burkburnett Bank,* 937 F.2d 1025, 1029 (5th Cir. 1991).

Although the DTPA is to be liberally construed, bringing a simple slip and fall case under the umbrella of DTPA would be to stretch the statute far beyond its intended purposes. The DTPA is meant to protect consumers against breaches of warranty and other false, misleading, and deceptive business practices. Tex.Bus. & Com.Code Ann. § 17.44; *Pope v. Rollins Protective Servs. Co.,* 703 F.2d 197, 201 (5th Cir.1983). There is no evidence of any deceptive trade practice in this slip and fall case.

Additionally, there is no evidence whatsoever that the Texas legislature intended for the DTPA to abrogate premises liability law. The result which Plaintiffs seek would do just that. To say that using floors in a business establishment is acquiring a service within the meaning of DTPA would completely envelope premises liability law, and it would establish a scheme wherein any shop owner in Texas would become subject to suit under the DTPA for any accident that occurred on her premises. This Court refuses to create a completely new area of tort law.

Therefore, it is hereby ORDERED that Defendant's Motion for Summary Judgement is GRANTED as to that part which seeks summary judgement under the DTPA.

### 2. Sanctions

■ Defendant also seeks sanctions be levied against Plaintiffs' attorney pursuant to Tex.Bus. & Com.Code Ann. § 17.50(c). Plaintiffs contend that their DTPA claim is not made in bad faith or for the purpose of harassment. The Court finds that Plaintiffs' claim is not made in bad faith, but is a nonfrivolous argument for the extension or modification of existing law. Therefore, it is hereby **ORDERED** that Defendant's request for sanctions is **DENIED.**

## B. NEGLIGENCE OR PREMISES LIABILITY

Plaintiffs have offered several theories to show negligence and premises liability. They allege that Defendant failed to properly train its employees to inspect the floors, when to inspect the floors, and how to clean or correct dangerous conditions on the floors. They allege that Defendant failed to train its employees how to warn customers of dangerous conditions. Finally, they allege that Defendant failed to institute a formal plan of inspection; failed to enforce any formal plan of inspection; and failed to inspect its floors in a timely manner. There is, however, no summary judgement evidence before the Court to support these allegations. Rather, the summary judgement evidence before the Court negates these allegations.

■ Where a plaintiff sues under a premises liability theory, she must show: (1) that the defendant had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to the plaintiff; (3) that the defendant failed to exercise reasonable care to reduce or to eliminate the risk; and (4) that the defendant's failure to use such care proximately caused the plaintiff's injuries. *Keetch v. Kroger,* 845 S.W.2d 262, 264 (Tex. 1992). Each of these elements is essential to prove premises liability. Therefore, if Plaintiffs fail to show that there is a genuine issue of material fact as to any of these elements,

their Complaint cannot withstand summary judgement.

■ An invitee's suit against a store owner is a simple negligence action. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983). Thus, the standard of conduct the defendant will be held to is the ordinary care that a reasonably prudent person would exercise under all the pertinent circumstances. *Id.*

■ Plaintiffs have failed to offer any summary judgement evidence to show that Defendant Wal–Mart had actual or constructive knowledge of the soap on the floor. Defendant Wal-mart has denied actual knowledge of the soap on the floor and Plaintiffs have not provided any evidence which would indicate that Defendant had actual knowledge of the soap on the floor. However, even without actual knowledge, Defendant Wal–Mart would be considered to have constructive knowledge of any premises defects or other dangerous conditions that a reasonably careful inspection would reveal. *Corbin,* 648 S.W.2d at 295.

The mere fact that there was a puddle of soap on the floor does not show that the Defendant should have known of the dangerous condition on the floor. Defendant has provided summary judgement evidence which shows that the soap was not on the floor when Wal–Mart employee Thompson last walked down and inspected the aisle, not more than ten minutes before Rojas' fall. Additionally, Defendant has provided evidence that Wal–Mart employees perform "zone checks" where they regularly inspect the aisles of the store, and that the last zone check had been performed at 3:30 p.m. on the day of the incident. There is also evidence before the Court that there was no debris in the soap, nor was it discolored. Rather, the mark left by Rojas' fall was the only mark in the puddle.

The cumulative effect of this evidence indicates that the soap had not been on the floor for very long, at least for no longer than ten minutes. There is nothing before the Court which indicates otherwise. No evidence indicates that Wal–Mart's actions were unreasonable, or that Wal–Mart should have

 

known that the soap was on the floor. Plaintiffs have failed to show that Defendant Wal-Mart had actual or constructive knowledge of the soap on the floor.

Plaintiffs have also failed to provide evidence to show that Defendant Wal-Mart did not exercise reasonable care to reduce or to eliminate the risk of harm. The aisle in which Rojas fell had been inspected not ten minutes before she fell, and the aisles were routinely checked by use of zone checks, that last of which was performed at 3:30. All evidence before the Court indicates that it was a recent and undiscovered spill. Plaintiffs have failed entirely to show that Wal-mart failed to exercise reasonable care.

■ Plaintiffs have also failed to produce any evidence which would support any of their negligence claims. In order to recover on a negligent activity theory, Rojas would have to show that she was injured by, or as a contemporaneous result of, the activity itself rather than by a condition created by the activity. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992). Plaintiffs have failed to provide any evidence that Rojas was injured by any activity of any Wal-Mart employee. Plaintiffs have failed to show that Defendant Wal-Mart failed to exercise reasonable care in training their employees to check or clean the aisles,[1] that Defendant failed to institute a formal inspection plan or that Defendant knew or should have known of the hazardous condition on its floors. There is no genuine issue of material fact of any of these issues before the Court.

Therefore, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** as to that part which seeks summary judgement on Plaintiffs' premises liability and negligence claims.

It is hereby **ORDERED ADJUDGED AN DECREED** that Defendant's Motion for Summary Judgment is **GRANTED** in total, except as to that part which seeks sanctions.

A take-nothing judgement shall be entered this same day.

IT IS SO ORDERED.

### *JUDGEMENT*

Came on this day to be considered Defendants' Motion for Summary Judgement, filed February 28, 1994. The Court, having examined the pleadings and evidence herein, and in conformance with the Memorandum Opinion and Order entered this same date, finds that Defendants' Motion for Summary Judgement should be and is hereby **GRANTED.**

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the claims asserted by Plaintiffs, Mary Ann Rojas and Joe Rojas, are in all things DENIED and a take-nothing judgement is hereby entered as to those claims.

IT IS SO ORDERED.

---

1. Plaintiffs did submit Rojas' Affidavit, which stated that she had worked for Sam's Club, a wholly owned subsidiary of Wal–Mart, Inc., and that the Sam's Club she worked for did not have a structured program for safety or safety-related matters. Without more, this evidence is wholly irrelevant to the Defendant's training policies.